UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEYSTONE KLUB KEYSER OAK, LLC, <br><br>　　　　Plaintiff, <br>　v. <br>EVANSTON INSURANCE COMPANY and ALBERT ABDA, <br><br>　　　　Defendants. | CIVIL ACTION NO. 3:25-CV-00505 <br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Presently before the Court is Plaintiff Keystone Klub Keyser Oak, LLC's ("Keystone") motion to remand this action to the Court of Common Pleas of Lackawanna County, Pennsylvania, pursuant to 28 U.S.C. § 1447(c). (Doc. 5). On February 7, 2025, Keystone initiated this action by filing a complaint in the Court of Common Pleas of Lackawanna County, Pennsylvania. (Doc. 1-2). On March 19, 2025, Defendant Evanston Insurance Company ("Evanston") removed this action to this Court pursuant to 28 U.S.C. § 1332(a). (Doc. 1, ¶ 19). For the following reasons, Keystone's motion to remand shall be **DENIED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the complaint, and for the purposes of the instant motion, is taken as true. (Doc. 1-2, at 2-20). This case stems from Evanston's denial of insurance coverage for defense costs and liabilities arising from an underlying lawsuit Keystone is defending. (Doc. 1-2, at 6). In April 2023, Evanston issued Commercial General Liability Insurance Policy No. 3AA660378 (the "Policy") to Keystone. (Doc. 1-2, at 6). The Policy extended from April 6, 2023 to February 26, 2024 and provided that:

> [Evanston], will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against

any suit seeking those damages.

(Doc. 1-2, at 6).

No exclusion in the Policy applies to exclude coverage for the claim against the Insured contained in the Complaint. (Doc. 1-2, at 4).

On November 7, 2024, Defendant Albert Abda ("Abda") filed a complaint against Keystone and Albert Christian Ceccoli ("Ceccoli"), alleging counts of assault and battery and intentional infliction of emotional distress against Ceccoli and a count of negligence against Keystone (the "Abda Matter"). (Doc. 1-2, at 25). The Abda Matter arose out of an incident in which Ceccoli, an owner and operator of Keystone, initiated a physical altercation with Abda, during which multiple improperly secured skill game machines fell on Abda causing injuries. (Doc. 1-2, at 7). Upon receipt of the complaint, Keystone reported the Abda Matter to Evanston. (Doc. 1-2, at 7). On January 17, 2025, Evanston notified Keystone that Evanston disclaims coverage and will not provide a defense or indemnification for Keystone's loss or on behalf of Ceccoli. (Doc. 1-2, at 10).

On February 7, 2025, Keystone filed a complaint in the Court of Common Pleas of Lackawanna County. (Doc. 1-2, at 2-20). Therein, Keystone alleges the following Counts: Count I – Declaratory Relief for Defense against Keystone (Doc. 1-2, at 10-13); Count II – Declaratory Relief for Indemnification against Keystone (Doc. 1-2, at 13-16); Count III – Bad Faith against Keystone (Doc 1-2, at 16-18); and Count IV – Breach of Contract against Keystone (Doc. 1-2, at 18-20).[1]

On March 19, 2025, Evanston removed the action this Court. (Doc. 1). On April 17,

---

[1] Abda was named a nominal defendant in this coverage action as required by 42 Pa. C.S. § 7540. For the purposes of the motion to remand, Keystone does not dispute the citizenship of Abda.

2

2025, Keystone filed the instant motion to remand, along with a brief in support. (Doc. 5; Doc. 6). On May 1, 2025 Evanston filed its brief in opposition to the instant motion (Doc. 7), and on May 14, 2025, Keystone filed its reply brief. (Doc. 8). Accordingly, the motion to remand has been fully briefed and is ripe for disposition.

**II.     LEGAL STANDARD FOR MOTION TO REMAND**

The removal of cases from state courts to federal courts is governed by 28 U.S.C. §§ 1441–1455. Under § 1441(a), a defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Pursuant 28 U.S.C. 1441(c)(2), the Court may sever and remand any "claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute."

Section 1446 of the removal statute further sets forth the procedures for removal, explaining that a defendant seeking removal of an action must file a petition for removal with the proper district court that contains "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants" in the state court action. 28 U.S.C. § 1446(a). After a case has been removed, a plaintiff may move to remand the action back to state court under 28 U.S.C. § 1447(c) for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." *Ramos v. Quien,* 631 F. Supp. 2d 601, 607 (E.D. Pa. Nov. 18, 2008) (quoting *PAS v. Travelers Ins. Co.,* 7 F.3d 349, 352 (3d Cir. 1993)). However, a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c).

3

Because federal courts are courts of limited jurisdiction, both the Supreme Court of the United States and the Third Circuit Court of Appeals have recognized that removal statutes are to be strictly construed against removal with all doubts resolved in favor of remand. *See, e.g., Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)).

### III.   DISCUSSION

Keystone moves to remand the instant matter to state court based on lack of subject matter jurisdiction. (Doc. 5). Keystone argues that Evanston cannot establish that the amount in controversy in this lawsuit exceeds $75,000. (Doc. 6, at 2). Keystone contends that it only seeks defense costs and indemnification for one claim in the Abda Matter that will not exceed $75,000. (Doc. 6, at 7-8). Keystone also contends that its claim for attorneys' fees in its complaint cannot be used to assume that the amount in controversy will exceed $75,000. (Doc. 6, at 9). Further, Keystone avers that since the parties disagree on the amount in controversy, the Court must determine by a preponderance of the evidence whether the amount in controversy requirement has been satisfied. (Doc. 6, at 6-8).

Evanston argues that the amount in controversy is in excess of $75,000 because Keystone seeks (1) a declaration as to coverage for defense and indemnification in an underlying action for serious injuries, (2) a declaration as to coverage under a policy with a $1,000,000 each occurrence limit, (3) recovery for bad faith denial of coverage, including enhanced interest, punitive damages, and attorney's fees and costs, and (4) recovery for breach of contract in which Keystone asserts it sustained damages including the amount paid and to be paid to resolve the Abda Matter, attorneys fees, litigation and support expenses,

defense costs, and interest. (Doc. 7, at 1-2). Evanston also contends that because state law did not limit the claimed amount to less than the federal jurisdiction amount when the action commenced, remand is only appropriate when it appears to a legal certainty that the amount cannot exceed $75,000. (Doc. 7, at 7).

Federal courts may only hear cases in which they have subject matter jurisdiction based on federal question or diversity jurisdiction. 28 U.S.C. § 1441(a). A court has diversity jurisdiction where the parties are citizens of different States and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). When removal of a civil action is based on diversity jurisdiction, the "sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). If the complaint seeks nonmonetary relief or money judgment but the state law does not permit demands for a specific sum or damages in excess of the amount demanded, the amount in controversy can be asserted in the notice of removal. 28 U.S.C. § 1446(c)(2)(A). In such a circumstance, the amount in controversy asserted in the removal is proper if the amount exceeds $75,000 by preponderance of the evidence. 28 U.S.C. § 1446(c)(2)(B).

Similarly, if the complaint is silent, ambiguous, or does not seek damages in a precise monetary amount, the court may look to the notice of removal to determine the amount in controversy. *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 663 (E.D. Pa. 2012) (citing *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006). In such circumstance, the amount in controversy asserted in the removal should be accepted when not contested by the plaintiff or questioned by the court. *Dart v. Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87-88 (2014). Only when a party's assertion of the amount in controversy is challenged must "both

5

sides submit proof and the court decides by the preponderance of the evidence whether the amount in controversy requirement has been satisfied." *Owens*, 574 U.S. at 88.

If there is no jurisdictional dispute of fact and the amount in controversy is determined in whole or part by applicable law, the Third Circuit looks to whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed. *Sciarrino v. State Farm Fire and Cas. Co.*, 476 F. Supp. 3d 91, 95 (E.D. Pa. 2020) (citing *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014)). If there is a jurisdictional dispute of fact, the Third Circuit applies the *McNutt/Samual-Basset* standard, providing that the defendant must "justify his allegations by a preponderance of the evidence." *Sciarrino*, 476 F. Supp. 3d at 95 (citing *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 198 (1936)). When a plaintiff first challenges the amount in controversy in a motion to remand, the party alleging jurisdiction must justify its allegations by a preponderance of the evidence. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 506 (3d Cir. 2014) (citing *Samuel-Basset*, 357 F.3d at 397; *McNutt*, 298 U.S. at 179-80).

An estimate of the amount recoverable should be objective and "not based on fanciful, 'pie in the sky,' or simply wishful amounts" as to not frustrate diversity jurisdiction. *Judon*, 773 F.3d at 506. For declaratory judgment actions, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397-398 (3d Cir. 2016) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). In an insurance coverage declaratory judgment action, federal courts look to the "value of the insurance policy and the damages alleged in the underlying case to determine whether the jurisdictional amount in controversy has been

6

met." *Dayton v. Employers Mut. Cas. Co.*, No. 20-2416, 2021 WL 4786383, at *3 (M.D. Pa. Oct. 13, 2021) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)).

Punitive damages and attorneys' fees are properly considered in calculating the amount in controversy. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993); *Suber v. Chrylser Corp.*, 104 F.3d 578, 585 (3d Cir. 1997). For insurance bad faith claims under 42 Pa. C.S. § 8371, punitive damages and attorney's fees totaling $75,000 are reasonable and possible. *Barbato v. Progressive Specialty Ins. Co.*, No. 21-0732, 2021 WL 3033863, at *3 (M.D. Pa. July 19, 2021); *see e.g.*, *Grossi v. Travelers Pers. Ins. Co.*, 79 A.3d 1441, 1160 (Pa. Super. Ct. 2013) (upholding punitive to compensatory damages ratio of 4:1 or 5:1); *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 379-80 (Pa. Super. Ct. 2002) (affirming award of $89,160 in attorney's fees where damages were $79,250).

In its complaint, Keystone seeks declaratory relief and monetary damages. (Doc. 1-2). While Keystone does not specify the amount in controversy in its complaint, on the complaint's civil cover sheet, Keystone claims damages in excess of $50,000 to remain above the arbitration limit in Lackawanna County. (Doc. 1-2, at 2). Its notice of removal, Evanston contends that the damages sought by Keystone will exceed $75,000. (Doc. 1, ¶ 52). In its motion to remand, Keystone contests Evanston's assertion of the amount in controversy, arguing that Evanston erred in attributing all injuries and damages pled in the underlying complaint to Keystone and in attributing all defense costs of the underlying action to Keystone. (Doc. 8, at 5-8).

Because Keystone contests the amount in controversy asserted in the notice of removal, there is jurisdictional dispute of fact, and Evanston must show by a preponderance of the evidence that the amount in controversy will exceed $75,000. *Sciarrino*, 476 F. Supp.

3d at 95 (citing *McNutt*, 298 U.S. at 198) (finding defendant must justify his allegations by a preponderance of the evidence when there is a dispute of jurisdictional fact); *Judon*, 773 F.3d at 506 (citing *Samuel-Basset*, 357 F.3d at 397; *McNutt*, 298 U.S. at 179-80) (finding the removing party must justify the alleged amount in controversy by a preponderance of the evidence when a plaintiff first challenges the amount in controversy in a motion to remand); *in re Lipitor Antitrust Litig.*, 855 F.3d 126, 150 (3d Cir. 2017) (finding the removing party has the burden of proving diversity of citizenship by a preponderance of the evidence). However, Evanston has shown sufficient evidence that the amount in controversy exceeds $75,000 under both the legal certainty and preponderance of the evidence standards.

In its notice of removal, Evanston has shown that the Policy has a $1,000,000 each occurrence limit and a $2,000,000 general aggregate limit. (Doc. 1, at 12). Evanston has shown that Keystone seeks defense and indemnification for the Abda Matter, in which Abda seeks an excess of $50,000 in damages for his personal injuries including,

> acute bilateral low back pain, acute internal derangement of left knee, fractured nose, head and neck pain, left shoulder pain and a finger laceration involving tendon, by reason of which [Abda] was forced to undergo mental anguish, physical pain, embarrassment, and humiliation.

(Doc. 7, at 9; Doc. 1, at 13).

While Keystone argues that Abda only asserts a negligence claim against Keystone that will not exceed $75,000 in damages, Evanston points out that Abda also alleges that Keystone is "vicariously liable for the actions of Defendant Ceccoli, as these actions were committed on the business premises and within the scope of his role as a representative of the business." (Doc 7, at 3; Doc. 1-2, at 31). While Keystone disputes its liability for Ceccoli's

8

actions, Keystone seeks for Evanston to be obligated to pay in full Keystone's legal liabilities arising out of the Abda Matter. (Doc. 1-2, at 15).

In the affidavit of David E. Edwards, Evanston has shown that the cost of defending a personal injury case like the Abda Matter would "involve significant discovery, including several depositions, independent medical exam(s), retention of medical and non-medical experts both as to liability and damages, a possible site inspection, dispositive motions, and significant trial preparation," likely exceeding $30,000.[2] (Doc. 7-3, at 3); *see, e.g.*, *Stranger v. Walmart Supercenter*, No. 24-CV-01093, 2024 WL 4393508, at *5 (M.D. Pa. Oct. 3, 2024) (valuing damages for severe injuries, embarrassment, humiliation, severe emotional distress, pain and suffering, medical services, and treatment of injuries… upwards of $75,000). Evanston also estimates that a typical budget for insurance coverage actions like this one typically exceed $25,000. (Doc. 7-3, at 4). Evanston has shown that if it must pay defense costs and indemnify in the Abda Matter, the damages could exceed $75,000. (Doc. 7, at 10).

In addition to the costs of defense and indemnity for the Abda Matter, Evanston has shown in its notice of removal and subsequent affidavit that Keystone's requests for bad-faith damages, including enhanced interest, attorney's fees, and punitive damages, could raise the amount in controversy above $75,000. (Doc. 1, at 13; Doc. 7-3, at 4). *Barbato v. Progressive Specialty Ins. Co.*, No. 21-0732, 2021 WL 3033863, at *3 (M.D. Pa. July 19, 2021) (finding punitive damages and attorney's fees totaling $75,000 are reasonable and possible for

---

[2] Later-filed affidavits can be used to justify the amount in controversy. *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits.); *see* 28 U.S.C. § 1653.").

insurance bad faith claims under 42 Pa. C.S. § 8371); *Ciccone v. Progressive Specialty Ins. Co*, No. 20-CV-981, 2020 WL 7319777, at *12 (M.D. Pa. Dec. 11, 2020) (holding amount in controversy exceeds $75,000 by the preponderance of the evidence because attorney's fees were available by statute and plaintiff's individual award could top $125,000, exclusive of interest and costs). Looking at the value of the insurance policy, damages alleged in the Abda Matter, and bad faith damages alleged, it is unlikely that the amount in controversy exceeds $50,000 but falls below $75,000.

## IV.   CONCLUSION

Considering all relief sought, Evanston has demonstrated by a preponderance of the evidence that the amount in controversy exceeds the federal jurisdictional minimum of $75,000. For the foregoing reasons, Keystone's motion to remand is **DENIED**. (Doc. 5).

An appropriate Order follows.

BY THE COURT:

Dated: February 7, 2026

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**